UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MICHAEL M.,[1] | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:17-cv-00175-RLY-DML ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
|     Defendant. | ) ) |

Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Acting Commissioner of the Social Security Administration ("Commissioner") that plaintiff Michael M. is not disabled.

---

[1] To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by his first name in this Report and Recommendation.

## Introduction

Plaintiff Michael M. applied in January 2007 for Disability Insurance Benefits and Supplemental Security Income benefits based on disability under Titles II and XVI, respectively, of the Social Security Act, alleging he has been disabled since September 1, 2002.  A final agency decision that he was not disabled was reversed and remanded after judicial review. The Appeals Council thereafter issued an order dated April 6, 2012, vacating the prior decision and directing an ALJ to hold a new hearing, take any further action to complete the record, and issue a new decision.  (R. 501).  A new hearing was then held in 2012 before a different ALJ (Robert Flynn) who issued a partially favorable decision on January 16, 2013, finding that Michael had become disabled as of November 21, 2009. The Appeals Council remanded this second decision for further consideration with respect to the pre-November 2009 period only; it did not disturb the finding of disability as of November 21, 2009. (R. 526).

Another new hearing was held in February 2016.  ALJ Flynn then issued a decision on April 16, 2016, reaffirming that Michael became disabled on November 21, 2009, when his age category under the grids changed to an "individual closely approaching advanced age," but also finding that before the change in age category, Michael was capable of performing the requirements of other jobs available in significant numbers in the relevant economy.[2]  On August 18, 2017, the Appeals

---

[2]   Because Michael's date last insured for purposes of DIB was June 30, 2007, the ALJ's decision that he became disabled thereafter—on November 21, 2009—had

2

Council denied review of the ALJ's April 2016 decision, rendering it the final decision of the Commissioner. Michael timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Michael argues that the Commissioner's decision that he was not disabled before November 2009 must be reversed and remanded because the ALJ did not properly evaluate the findings and opinions of three doctors and because the ALJ's negative credibility determination is patently wrong.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Michael's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Michael is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented

---

the effect of denying his application for DIB benefits and granting SSI benefits effective in December 2009, one month after the disability onset date.

these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his vocational profile (age, work experience, and education) and RFC; if so, then he is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I.     The ALJ's Sequential Findings

This case concerns only the period between Michael's alleged onset of disability in September 2002 and November 20, 2009, when he was adjudged disabled based on the grids.

Michael was born in 1959 and was 42 years old as of his alleged disability onset date in September 2002. Michael traces his onset date to a period after which he had undergone the last of a series of procedures stemming from the traumatic effects of certain injuries.

Michael had first suffered catastrophic injuries to the left side of his body when he was 12 or 13 years old and was run over by a pickup truck. He suffered fractures to his left shoulder, elbow, hand, femur, hemipelvis, and ankle. Because of lost growth in his left femur, Michael's right femur bone was shortened by about 1 ½ inches when he was 18 years old. Almost 25 years later in late 2000 or January 2001, while he was in the woods training a dog to "run" or "get up" rabbits, Michael stumbled into a brush pile and suffered serious injuries and a laceration to his left leg where his skin was grafted. After initial evaluation and treatment had failed, Michael was seen by an orthopedic surgeon who found that the left leg had become infected and would not heal (an open wound would not close and bone was exposed). Imaging showed that Michael's bones in his left foreleg were suffering from chronic

infection. Michael ultimately underwent several procedures in July and August 2001 and in October 2001, including surgeries to remove devitalized or contaminated tissue and to transfer muscle and tissue from one or more body areas to others.

At step one, the ALJ found that Michael had not engaged in substantial gainful activity since his alleged onset date in September 2002. At step two, the ALJ identified the following as severe impairments: remote history of fracture to left leg, left elbow, forearm, wrist, and fingers; status post leg wound with infection; chronic osteomyelitis (which means infection in the bone); left leg length discrepancy; and arthritis of the leg, back, hip, neck, and left shoulder. At step three, the ALJ found that no listings were met or medically equaled.

The ALJ next determined Michael's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. He restricted Michael to sedentary work as defined at 20 C.F.R. § 404.1567(a), with additional postural, climbing, foot operation, fingering, reaching, and environmental restrictions. He limited him to jobs that allow the use of a cane or similar assistive device while standing. (R. 853). Finally, the ALJ imposed restrictions based on the effects of his pain and medications to accommodate moderate limits in his ability to maintain concentration, persistence, or pace. (*Id.*)

The ALJ found that Michael could not have performed his past relevant work (in telemarketing and sales management, as a reservations clerk and office worker, and as an automobile salesperson), all of which was more demanding—particularly

7

because the work was skilled or semi-skilled—than his functioning allowed. The ALJ then concluded, based on the testimony of a vocational expert, that before Michael's change in age category (at which point he gridded as disabled because he was 50 years old and limited to unskilled, sedentary work), he was capable of the following work existing in significant numbers in the economy: Document Preparer, Addresser, Call-Out Operator, Para-Mutual Ticket Checker, and Surveillance System Monitor. Thus, the ALJ found at step five that Michael was not disabled between his alleged onset date in 2002 and November 2009 when he turned 50.

## II.  Michael's Assertions of Error

Michael argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly evaluated medical findings and opinions by three doctors: (1) Dr. John Nehil, an orthopedic surgeon who saw Michael in January 2006 because of low back pain; (2) Dr. Mehmet Akaykin, who conducted a consultative physical examination on behalf of the SSA on March 12, 2007, and (3) Dr. Shuyan Wang, who conducted a consultative physical examination on behalf of the SSA on June 19, 2012.  He also argues that the ALJ's analysis of his symptoms and their effects on his functioning was patently wrong.  The court addresses these issues in reverse order because, as explained below, the ALJ's determination about the persuasiveness of Michael's symptomology does not withstand scrutiny and requires remand.

### III.   The ALJ's Evaluation of Michael's Symptoms and Limitations

Before discussing the ALJ's bases for finding Michael's descriptions of the limiting effects of his impairments not persuasive, the court first provides some additional information about Michael's medical impairments and treatment.

As noted above, Michael suffered serious injuries and fractures to the entire left side of his body when he was 12 or 13 years old and later, at age 18, the right femur bone was shortened by 1 ½ inches in an attempt to match the length of his left leg, whose growth had been affected by the prior injuries.  He had a fracture to his left knee in either 1989 or 1990, at around age 30.  He then, at around age 41, suffered additional injuries when he suffered a puncture to his left leg while out hunting rabbits.  His injuries would not heal, and he required surgeries in late July/early August 2001 and again twice in October 2001 to remove dead or contaminated tissue and to graft new muscle and skin.

There are no medical records for treatment after those surgeries and before January 2006, when Michael sought treatment from Dr. John Nehil because of low back pain.  Dr. Nehil had last seen Michael in 1989/1990 because of a left knee fracture.  (R. 218).  And other than the January 2006 office visit with Dr. Nehil, the only other medical examination records that post-date Michael's alleged onset of disability are reports from consultative examinations done at the behest of the SSA in evaluating his disability claims.  Those consultative examinations took place on March 12, 2007 (by Dr. Mehmet Akaydin), before the very first hearing on Michael's

9

disability applications, and on June 19, 2012 (by Dr. Shuyan Wang), before the second hearing on Michael's disability applications.

### A. The decision lacks detailed information about medical evaluations and Michael's subjective statements about symptoms and function.

ALJ Flynn's decision is a virtual carbon copy of the one he issued in January 2013. There are essentially only two differences. First, he provided more detailed information in the RFC about Michael's difficulties with concentration, persistence, or pace.[3] The second difference lies in the "credibility" terminology, presumably because of the SSA's adoption, effective March 28, 2016, of a new policy ruling (SSR 16-3p) that (1) clarified how the Agency would evaluate a claimant's statements about his symptoms and limitations, (2) eliminated use of the term "credibility," and (3) noted that the Agency's evaluation was not designed as an examination of a claimant's character. Despite his use of new terminology in the third decision, the ALJ did nothing new in evaluating whether to credit as part of the RFC Michael's descriptions of his functioning.

The decision contains very little information about the examinations by Drs. Nehil, Akaydin, and Wang. Drs. Nehil's and Dr. Akaydin's exam records were part

---

[3] The first decision from May 2009 was reversed and remanded on judicial review because of an error in evaluating Michael's functional capacity in light of his difficulties with concentration, persistence, or pace. The second decision from January 2013 was remanded by the Appeals Council because it did not address the errors that had prompted the court's earlier reversal and remand. The Appeals Council's remand order from the second decision—which led to the third decision under review here—did not, however, purport to limit the evaluation of disability to accommodations for mental impairments. The second decision was never subjected to judicial review.

of the administrative record when the two prior decisions were issued (in May 2009 by ALJ D. Lyndell Pickett and in January 2013 by ALJ Flynn) and Dr. Wang's exam records were also part of the record at the time of ALJ Flynn's January 2013 decision. Instead of providing a thorough discussion of these doctors' findings, the ALJ purported to "incorporate by reference herein" all the evidence that had been discussed in the two prior decisions that was not "disturbed" by the district court or Appeals Council. (R. 855). That's the same tack he took in the January 2013 decision, when he again purported to "incorporate by reference" all the evidence discussed in the prior 2009 decision.

The effect of this approach by the ALJ is that the decision under review here reads as one that is focused primarily on giving reasons why Michael's statements about his pain and other symptoms and their effect on his functioning should not be credited.

The decision itself is bereft of information from which one might glean the seriousness of Michael's physical condition. But as noted in the detailed examinations by the two doctors (Drs. Nehil and Akaydin) who examined Michael during the period of alleged disability under review here, Michael's right leg is still about one inch longer than his left leg, his right hemipelvis is higher than on the left side, his thigh on the left leg is atrophied, his knee and Achilles tendon reflexes are severely diminished on the left side, and his left ankle is fused. He demonstrated some diminished range of motion at the left shoulder, in the hips, and in bending forward and backward. As of January 2006, x-rays showed he has a

11

"good deal of evidence of degenerative disc disease at L2-L3" and has some lumbar scoliosis with degenerative change along the concavity of the curve.

The decision also lacks any meaningful discussion, or even acknowledgement, of the evidence from Michael about his pain and other symptoms from his impairments and how they affect him on a day-to-day basis. That information is contained in function reports and Michael's testimony at the three administrative hearings, two of which were before this ALJ, yet the ALJ's decision does not provide any description of that evidence. The only information in the decision about Michael's symptoms and their effects—from Michael's perspective—is that he "testified that he requires a cane and maintains a very limited ability to walk." (R. 856). The ALJ did not discuss Michael's testimony about how he spent typical days in the period after alleged onset and when he turned 50, including difficulties in remaining seated or standing for prolonged periods and therefore spending most of his time lying down or reclining in order to take the pressure off of his body from when he sits or stands.

### B.     The ALJ's evaluation of Michael's symptoms is patently wrong.

Under SSR 16-3p, an ALJ is required to evaluate a claimant's subjective symptoms and their effects on his functioning in light of the relevant objective medical evidence, the consistency (or not) across time of the claimant's descriptions about his symptoms and their effects, the activities the claimant has engaged in and whether and how he may have structured his activities to minimize his symptoms to a tolerable level, and any other information such as about medications,

precipitating and aggravating factors, and treatment that may shed light on the persuasiveness of the information the claimant provides.

An ALJ's evaluation is entitled to special deference from the court unless it can be said to be "patently wrong." *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015). A court may find it patently wrong if the ALJ's determination is not "competently" explained or is grounded in reasons that are not supported by the record, *id.,* or are otherwise factually or logically mistaken. *Allord v. Barnhart,* 455 F.3d 818, 821 (7th Cir. 2006). Further, when an ALJ's evaluation is particularly error-infected, remand is required because the court cannot determine whether the ALJ would otherwise have come to the same conclusion about the claimant's functional capacity and ability to work. *Id.* (a credibility determination is a judgment call and when the ALJ "based his judgment call on a variety of considerations but three of them were mistaken," the court cannot be sure that the same determination would be made had he not erred).

The court finds here that the ALJ's evaluation is so rife with error that it is patently wrong and remand is required.

First, as noted above, the ALJ's decision does not even identify the symptoms and functional effects that he finds should not be credited. The ALJ mentioned that Michael testified he requires a cane (which the ALJ agreed with and the RFC includes a cane) and has a "very limited ability to walk," and the court can guess that that "limited ability" is different from the one the RFC provides Michael can do—stand and/or walk up to two hours in a work day. But the ALJ did not mention

13

Michael's testimony about his limitations in remaining seated for long periods and his need to lie down or recline most of every day after he has put pressure on his body from sitting or standing. The court is merely left to surmise that the ALJ found all of Michael's testimony other than the need to use a cane while walking not persuasive, but the court does not know if the ALJ considered all of the pertinent testimony.

Second, the ALJ did not discuss Michael's testimony about his daily living activities. There is no evaluation whether those activities are consistent (or not) with the amount of time Michael also testified (or addressed in function reports) he can sit, stand, or walk in a day.

Third, the ALJ did not discuss whether Michael's information about his activities and his functioning was or was not consistent over time. Michael testified at three different hearings that took place years apart, and separately provided function reports that are also part of the record, yet the ALJ provided no analysis about the consistency of the information.

Fourth, the ALJ relied on a supposed inconsistency from Michael's testimony during the 2012 hearing about when he had last gone hunting. He testified that it happened in either 1999 or 2000, but the ALJ attacked his overall credibility because a medical record reported that the hunting incident that gave rise to the injuries leading to his disability application occurred in 2001. (R. 856). As Michael aptly points out, there is—at best—a minor discrepancy in dates and perhaps no discrepancy at all. The incident happened in either December 2000 or early

14

January 2001.  *See* Dkt. 22 at pp. 32-33.  The fact the ALJ chose to highlight this alleged discrepancy in dates suggests he was straining to find reasons to support a finding that Michael's reports about his symptoms and functioning should not be credited.

Fifth, the ALJ relied primarily on Michael's lack of medical treatment as the reason for doubting the severity of Michael's symptoms and their effects.  While he acknowledged that Michael stated that lack of treatment was in part because of a lack of health insurance, the ALJ gave problematic reasons for doubting that Michael's lack of treatment stemmed from a lack of insurance.  The ALJ surmised that Michael could have "attempted to procure government assisted medical programs" if he really needed insurance to seek treatment, but Michael was not asked about this matter and there is nothing in the record to explain whether Michael would have qualified for a government program or the extent of those benefits.  The ALJ also noted that a lack of insurance was not mentioned in the treatment record from Michael's January 2006 visit to the orthopedist, but the relevant treatment record is not a billing or patient intake document on which insurance information might be expected to be listed.  The record instead reads as a doctor's transcribed medical evaluation.

The ALJ also suspected that if things were as bad as Michael claimed, then he "would at least" have sought emergency treatment but did not. As the Commissioner acknowledges, it is improper to discount a claimant's symptomology because he did not seek emergency department treatment, particularly when there

is no indication the claimant suffered from some medical condition for which emergency treatment would even be appropriate (assuming the claimant could even afford to be seen at an emergency room). *See Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) (noting the illogic of discounting credibility because of the lack of emergency room treatment, especially for conditions that are not medical emergencies).

Michael testified in some detail about his understanding that his conditions were not amenable to further treatment; he already had had all the surgeries and treatment that could be done for his injuries. He saw the orthopedic doctor once in January 2006 because of a new problem—severe low back pain—but learned that there was not much to be done about that either. Michael testified, "I could not afford to go to the doctor's just to get check-ups. I basically did what I was told to do and adhered to that. . . ." (R. 392). The ALJ did not address at all whether Michael's reasons for not seeking more treatment (or emergency treatment) are consistent with the type of injuries and conditions that he had. He also did not address whether Michael's daily living activities were consistent with being careful not to need treatment because of a lack of insurance to pay for it.

Finally, while the ALJ appropriately addressed whether Michael's statements were or were not consistent with objective medical evidence (essentially, the information provided in the reports of the doctors from the three examinations—in 2006, 2007, and 2012), that evaluation lacks weight because the ALJ omitted to provide fulsome information about the content of that medical

16

evidence. Instead, the ALJ's decision reflects a focus on the portions of the reports that support his finding, and he generally omits discussion of those portions that may detract. The ALJ's failure to provide a full picture of Michael's condition within his decision—rather than merely purporting to incorporate by reference a different ALJ's discussion in the 2009 decision—makes the picture appear unfairly one-sided and perfunctory.

The court does not otherwise address Michael's contentions that the ALJ did not properly evaluate "findings" or "opinions" of Drs. Nehil, Akaydin, and Wang.[4] The court assumes that on remand, the ALJ's evaluation of Michael's symptoms and functioning as required under SSR 16-3p will include a more detailed discussion of those medical findings so that the ways in which Michael's symptoms/functioning are or are not consistent with this medical evidence is fairly evaluated.

For all of the foregoing reasons, the court determines that the ALJ's evaluation of Michael's symptoms and functioning is patently wrong and requires remand.

---

[4] The court does note, however, its skepticism about Michael's assertion that the ALJ did not properly evaluate Dr. Wang's consultative examination findings and functional capacity evaluation from 2012. The 2012 date is *after* the period of potential disability under review by the ALJ. Nothing in Dr. Wang's report or functional capacity evaluation suggests that the evaluation pertains to any historical time; in other words, there is nothing within the report that indicates Dr. Wang was making a retrospective medical or functional evaluation as opposed to reporting on Michael's condition and abilities as he assessed them on June 18, 2012.

## Conclusion

The Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

**Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

IT IS SO RECOMMENDED.

Dated: February 22, 2019

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system